[Civ. No. 14217.   First Dist., Div. One.   July 26, 1950.]

JOHN F. KERRIGAN, as Referee, etc., Appellant, v. ZEREFA MALOOF, Respondent.

Knight, Boland & Riordan, F. Eldred Boland, John H. Riordan, F. J. Kilmartin, Burton L. Walsh and Oswald A. Hunt for Appellant.

Leo R. Friedman for Respondent.

PETERS, P. J.—This is an action brought under section 785 of the Code of Civil Procedure by Kerrigan, referee in partition, against Zerefa Maloof, a defaulting bidder, to

recover the difference between the sale price as bid by Maloof and confirmed by the court, and the price obtained on a second partition sale. Maloof cross-complained for $8,000, the amount of her deposit. At the close of the trial before a jury the trial court directed a verdict in favor of Kerrigan on all issues, and judgment was entered accordingly. Thereafter, on motion of Maloof, a new trial was granted ''on insufficiency of evidence and errors in law.'' By the same minute order the court provided: ''Orders striking out certain defenses and portions of cross-complaint set aside.'' From this minute order Kerrigan appeals.

The motion for a directed verdict and the motion to strike out certain defenses and a portion of the cross-complaint were granted on the theory that the basic issues involved were res judicata by reason of this court's decision in *Hirschberg* v. *Oser,* 82 Cal.App.2d 282 [186 P.2d 53]. Maloof was the appellant in that action. The facts of that case, as set forth in the opinion, are as follows (p. 283) :

''Appellant was the successful bidder at the referee's sale of certain real property in the above-entitled partition action. After the property had been sold to her, she refused to pay the purchase price, claiming misrepresentations to her by her own attorney. The validity of the sale is in nowise attacked. She contends that the proceedings for confirmation and subsequent proceedings are invalid.

''The sale took place July 3, 1946. On July 10, a 'Return and Account of Sale of Referee in Partition' was filed. After reciting the notices given of the sale, the proceedings at the time of sale, the fact that the bid of appellant in the sum of $75,000 was the highest and best bid, that appellant deposited with the referee the sum of $8,000 of such bid, the fact that the property which is therein described was sold to appellant as the highest and best bidder, the return prays that after hearing the court 'if it so determines, approve said sale and order said Referee to make a deed conveying said property upon the payment of the balance of the purchase price.' ''

The opinion then points out that, in the manner provided by law, on July 20, 1946, the sale to Maloof was confirmed; that ''Up to this point, the appellant was apparently satisfied with the sale and proceedings, and made no objections thereto. In fact, her attorney was present at the hearing, evidently for the purpose of making certain that the sale was confirmed to her.'' (P. 284.) The opinion continues (p. 284): ''On August 29, appellant filed a 'Petition to Vacate Sale and

Relieve Bidder and Return Money' in which she asked that the sale be vacated because of alleged misrepresentations by her own attorney. The hearing of this petition was had on September 11, and denied by the court. The same day appellant filed a 'Dismissal Without Prejudice' of that petition.''

On October 8, 1946, there was filed by the trial court a combination order confirming sale and a final decree in partition. The order recites that the property was sold to Maloof for $75,000, that the sale was legally made and conducted, and then confirmed the sale and ordered the referee to convey the property to Maloof upon receiving the balance of the purchase price.

The opinion continues (p. 285):

''On October 25, there was filed a 'Supplemental Report of Referee and Petition for Instructions.' Notice of its filing and the date set for hearing was given to all parties, including appellant. This report set forth the fact that the referee on October 11 had tendered to appellant a properly executed deed of the property purchased by her at the sale and that she had refused to accept it and had notified him that she did not intend to complete the sale. It asked the court to order a resale, and to authorize the referee to recover from appellant any loss that might be occasioned by the resale, and asked for further instructions.

''At the hearing of this petition the court instructed the referee to resell and to retain appellant's deposit, and institute suit to collect from her any loss from the resale. On November 18, after notice given, appellant moved the court to 'Vacate and/or Modify Order of Resale.' This motion was denied by minute order on November 27.

''After reselling there was filed a 'Report and Return of Referee in Partition on Resale of Premises,' in which the referee set forth the proceedings by which he resold the property for $55,000. Notice of motion to confirm this report was given to appellant and all the parties. On December 18, appellant filed 'Objections to Confirmation of Resale of Real Estate.' On December 20, the court made and entered its order overruling appellant's objections and confirming the resale of the real estate. On December 27, the court signed and on December 28, filed an 'Order Denying Objections to Confirmation of Resale of Real Estate.'

''Appellant has appealed from (1) the final decree in partition; (2) the order denying the motion to vacate and/or modify the order of sale; (3) the order denying the objections

to confirmation of the resale; and (4) the order confirming the resale."

This court affirmed all the orders appealed from. Among other things, it was held that the sale to Maloof had been validly confirmed, and that she was in default when she failed to pay the purchase price and to carry out the terms of the contract.

As pointed out above, Maloof's bid was $75,000, while on the resale the referee was able to secure but $55,000. Maloof had made an $8,000 deposit. Thus, the loss, occasioned by Maloof's default, was $12,000, plus $43 costs. The present action was commenced by the referee on April 22, 1948. The complaint sets forth the history of the case substantially as set forth above and asks for judgment for $12,043, with interest from the date of default. Maloof answered, denying the material allegations of the complaint, set forth some affirmative defenses, and cross-complained for the $8,000 deposit. On motion of the referee the trial court struck from Maloof's answer certain paragraphs which denied that the terms of the second sale were the same as those of the original sale, and further denied that the referee had suffered any damage by the failure of Maloof to pay the price bid by her. Certain paragraphs of the cross-complaint were also stricken on motion. These paragraphs alleged that Maloof's attorney was unauthorized to make a bid of $75,000 at the original sale, that no loss was incurred by the owners of the property by reason of the default because those who bid at the resale were part owners of the property sought to be partitioned, and because at the time of resale the property was reasonably worth $75,000 and should not have been sold for $55,000, and because the conditions and terms of the resale differed from those of the original sale. These motions to strike were granted on the theory that all such defenses already had been determined adversely to Maloof in the prior actions.

### What Issues Are Res Judicata?

There can be no doubt but that, by the prior decision of this court, most of the issues sought to be raised by Maloof, and stricken by the trial court, have already been decided adversely to Maloof. The prior decision adjudicated the validity of the first sale, determined that that sale had been legally made and conducted, determined that Maloof had been the highest bidder at that sale and had bid $75,000, and

deposited $8,000 on the purchase price, and that this bid had been validly confirmed by the court. It also finally determined that a proper tender of a deed had been made by the referee, but that Maloof had refused to accept it and defaulted in the purchase. It also finally determined that upon petition of the referee the court instructed the referee to resell, to retain the $8,000, and to institute suit to collect from Maloof any loss from the resale. The validity of the resale has also been adjudicated.

The point need not be labored that defenses and causes of action between the same parties once presented and considered cannot be again asserted in another action without a violation of the principles of res judicata. This includes not only all matters directly decided in the first action, but also all matters in issue that could have been or might have been decided. (2 Freeman on Judgments (5th ed.), p. 1646, § 774; *Servente* v. *Murray,* 10 Cal.App.2d 355, 364 [52 P.2d 270]; *Estate of Clark,* 190 Cal. 354, 360 [212 P. 622]; *Sutphin* v. *Speik,* 15 Cal.2d 195, 202 [99 P.2d 652, 101 P.2d 497]; *Borland* v. *Borland,* 56 Cal.App. 638, 641 [206 P. 478]; *Crew* v. *Pratt,* 119 Cal. 139, 149 [51 P. 38].)

It follows, of course, that all matters heretofore litigated are res judicata. They have been enumerated above. The only serious question is whether the issue as to whether the terms of the second sale were the same as those of the first sale was decided in the prior proceedings.

In the instant case, in her answer, Maloof alleged that the sale was not made upon the same terms and conditions as the original sale ''in that said sale was made subject to whatever rights the said defendant [Maloof] may or might have had by virtue of an appeal filed prior to the date of said sale.'' In her cross-complaint Maloof alleges that the offer of resale ''contained the condition that said property was resold subject to her [Maloof's] rights, which may or might accrue by virtue of her appeal . . . ; that [on the resale] no independent bidders bid on said property and that . . . the only bidders . . . were A. Hirschberg and Dwight Gaylord, attorney for the estate of Amelia Waterland, deceased, both of whom were co-owners of the property under the original sale.'' The cross-complaint also contains an averment very similar to the one contained in the answer and quoted above. In addition, at the trial, Maloof made an offer to prove that the referee at the resale ''announced to the assembled persons that the sale was made subject to any right existing in the defendant and

cross-complainant by reason of the appeal then pending before the District Court of Appeal. . . . that the consensus of opinion at that assembled gathering was that the purchasers of the property, they were purchasing a lawsuit; and that the bid of Mr. Hirschberg in the sum of $55,000, as compared to his partner and co-plaintiff at the previous sale, which proof will show that the said David at the previous sale bid $74,000, was—the bid of $55,000 was made due to the fact that there was an appeal pending that had not been determined as to whether the property would have any cloud on its title, or just exactly what the purchaser was buying.'' The trial court, on motion, struck the quoted paragraphs from the pleadings, denied the offer of proof, and also refused to allow Maloof to prove that the purchasers at the resale were the owners of a four-fifth's interest in the property purchased by them. These rulings were based on the theory that all of these issues were res judicata.

Of course, without now considering the doctrine of res judicata, the mere fact that Maloof had an appeal pending when the resale was had, would not make the terms and conditions of the resale different from those of the original sale, because, as a matter of law, that appeal could have had no effect upon the title to the property. Maloof, on that appeal, was not claiming title, but was seeking to avoid the transaction. Certainly, a defaulting purchaser cannot, by simply appealing from the confirmation of the sale, prohibit a resale until the appeal is decided, or prohibit a judgment against him for the loss occasioned, on the ground that because of an appeal, in no way affecting title, the terms of the resale are different from those of the original sale. But here the pleadings, and particularly the offer of proof, went further than merely to offer to prove that an appeal was pending—the offer was that the referee represented to the prospective bidders, and the bidders believed, they were buying a lawsuit that would be a cloud upon the title. If the referee made any such representations, then, the resale would have been held under conditions radically different from those prevailing at the original sale. It must be remembered that the original sale was had in July, 1946, and the resale was made on December 2, 1946. At the original sale Maloof bid $75,000, and there was an offer to prove that a man by the name of David was a partner of Hirschberg and that he bid $74,000 at that sale. Yet, less than six months later, Hirschberg bid but $55,000, and apparently

David made no bid. It is a possible inference that the difference between the bids was caused by reason of the fact, if it be a fact, as Maloof offered to prove, that the referee represented that the purchaser at the resale was purchasing a lawsuit, and that the appeal was a cloud on the title.

█  Considering this point on its merits, there can be no doubt that, if the referee represented that the appeal constituted a cloud on the title and that the bidder at the resale was purchasing a lawsuit, then the referee would be barred from successfully maintaining this action. Ever since the decision of the Supreme Court in *Hammond* v. *Cailleaud,* 111 Cal. 206 [43 P. 607, 52 Am.St.Rep. 167], it has been the law that a defaulting purchaser at a partition sale cannot be held for the loss occasioned by a resale at a lower price when the conditions of the resale are different from those prevailing at the original sale. In that case, the defendant purchased at the original sale for $7,500, paying in cash 10 per cent of the purchase price as a down payment. He subsequently defaulted, claiming that the title to the property was defective. Over his objections on this ground the sale was confirmed. He defaulted. Thereafter, at a resale, the highest bid was $5,000. The plaintiff instituted the action for the amount of the loss occasioned by the resale. The defense was that at the resale the referee made it clear to all bidders that they had to take title as it stood, and that there was no warranty of title, while at the original sale, everyone thought that a clear title was offered. The court refused to allow defendant to prove these facts. This was held to have been error. At page 219 the court stated: ''These authorities clearly show that for any error, irregularity, or misrepresentation of the officer, whether intentional or otherwise, whereby the purchaser has been misled to his prejudice to such extent as to make it unconscionable that his contract of purchase should be enforced against him, the sale will not be confirmed. But in this case, as here presented, it is not necessary to go further than to hold that if, by the alleged terms and conditions of the sale to appellant, he was led to bid more for the property— to any material extent, at least—than he would if he had been informed, as the purchaser was at the second sale, that he must take the title as it was, whether defective or not, it is obvious that the resale did not furnish any just measure of damages. No fact or circumstance is disclosed by the record other than the different conditions under which these sales were made, which tends, in any degree, to account for the difference

between the final bids at these two sales; and, under such circumstances, we must conclude that all above the amount of the second sale which was bid at the first, was induced by the condition that the purchaser took no risk as to the title. The owners are estopped from saying that the price obtained upon the second sale was inadequate, since they are not shown to have opposed confirmation upon that ground, and, therefore, the presumption is strengthened that the higher price obtained at the first sale was secured by the more favorable conditions given to appellant.''

Under the rule of this case it is quite clear that, in the instant case, the trial court should have permitted Maloof to prove, if she could, that the terms of the two sales were substantially different. If she could prove that such was the fact, she had a complete defense to the action for the claimed loss. The referee does not attack the rule of *Hammond* v. *Cailleaud, supra,* and does not deny that, if it was permissible to raise the point, the trial court was in error in striking this defense from the pleadings and in refusing to permit the offer of proof, but simply contends that the issue was decided adversely to Maloof in the prior proceedings.

This claim of res judicata is based upon the following facts: After the resale Maloof objected to its confirmation on the ground that the resale had been made subject to the appeals in the Hirschberg case. Over these objections the court, on December 20, 1946, confirmed the resale, on December 28th filed an ''Order Denying Objections to Confirmation of Resale of Real Estate,'' and also entered an order denying the motion to vacate or to modify the order of resale. Thus, so it is claimed, there were three separate adjudications of the very issue here involved.

We do not think that by these orders the court was passing upon, or could then pass upon, the amount of the loss that could be recovered from Maloof occasioned by the resale. The court did adjudicate that the original sale was valid, that Maloof was bound by the terms of that sale, that the resale was properly noticed and conducted, and was valid, and that any legal loss caused by the resale should be recovered from Maloof. But at that time there was and could be no issue as to whether the terms of the two sales were substantially identical. Whether they were or were not identical did not affect the validity of the sales, nor did it determine the amount of the loss that could be recovered. That issue was

appropriately raised for the first time in the present action.

Thus, the trial court was in error when it struck the defenses involved from Maloof's pleadings, and when it denied the offer of proof. The verdict was improperly directed, and the trial court properly granted the new trial because of an error in law at the trial. For this reason the order granting the new trial must be affirmed.

■ It is necessary for the guidance of the court on the retrial, to pass on another question raised by the parties. Maloof contends that, under present law, under no circumstances may a court grant a judgment against a defaulting purchaser at a partition sale for the loss occasioned by the resale, because, so it is argued, such is a deficiency judgment "for failure of the purchaser to complete his contract of sale" within the meaning of section 580b of the Code of Civil Procedure, and that such deficiency judgments are prohibited by that section. This presents a most interesting problem.

Section 580b was first added to the code in 1933 (Stats. 1933, p. 1673, ch. 642), as part of the depression relief legislation. As then passed, the section provided: "No deficiency judgment shall lie in any event after any sale under a deed of trust or mortgage given to secure payment of the balance of the purchase price of real property." The section was reenacted in 1935 (Stats. 1935, p. 1806, ch. 650), and also amended in that year (Stats. 1935, p. 1869, ch. 680). As finally enacted in 1935, and as the section now reads, it is provided: "No deficiency judgment shall lie in any event after any sale of real property *for failure of the purchaser to complete his contract of sale,* or under a deed of trust, or mortgage, given to secure payment of the balance of the purchase price of real property." (Italics added.) Maloof vigorously argues that, by this 1935 amendment, the Legislature put all contracts for the purchase and sale of real property on precisely the same footing as mortgages or deeds of trust given to secure the balance of the purchase price, and that a resale in a partition proceeding and a suit for the loss is an attempt to recover a deficiency judgment in violation of this section. It should be mentioned that section 580b is found in title VIII of the Code of Civil Procedure, entitled "Trial and Judgment in Civil Actions."

The referee relies upon the specific provisions of section 785 of the Code of Civil Procedure, directly authorizing referees to bring an action against a defaulting purchaser in a partition

proceeding for the loss occasioned on the resale. This section is found in title X of that Code entitled "Actions in Particular Cases," and in chapter IV of that title entitled "Actions for Partition of Real (and Personal) Property." The section reads as follows: "If the sale is confirmed by the court, an order must be entered directing the referees to execute conveyances and take securities pursuant to such sale, which they are hereby authorized to do. Such order may also give directions to them respecting the disposition of the proceeds of the sale. *If the purchaser, after the confirmation of the sale, refuses to pay the amount of his bid, the referees may again sell the property at any time to the highest bidder, and if any loss is occasioned thereby the referees may recover the amount of such loss and the cost from the bidder so refusing,* or the referees, without making a resale, may maintain an action against the purchaser for the amount of his bid." (Italics added.) This section was originally enacted in 1872 and was amended in 1907.

The basic premise of Maloof's argument is that, insofar as section 785 authorizes the referee to obtain a judgment against a defaulting purchaser at a partition sale for the amount of the loss occasioned by the resale, it has been repealed by implication by the 1935 amendment to section 580b. According to this argument, the only remedy now available to the referee against a defaulting purchaser at a partition sale is to maintain an action against him for the full amount of his bid. If this argument is sound it also prohibits such actions in sheriff's sales (Code Civ. Proc., § 695), probate sales (Prob. Code, § 788) and other types of judicial sales.

The argument of Maloof is interesting and ingenious, but unsound. Section 4481 of the Political Code provides that, in construing the various provisions of the code, "If the provisions of any title conflict with or contravene the provisions of another title, the provisions of each title must prevail as to all matters and questions arising out of the subject matter of such title." Section 4482 extends the same rule to conflicts between chapters of the codes. (See 23 Cal.Jur. p. 792, § 170; *In re Kennerly,* 190 Cal. 774, 776 [214 P. 857].) Maloof tries to avoid the obvious application of this statutory rule of construction by the contention that this is not an action brought under the partition provisions of the Code of Civil Procedure, but is a simple action for damages brought under the provision of code relating to money judgments, and is

therefore controlled by section 580b. The point need not be labored that the present action was brought under and by virtue of section 785. The Political Code section quoted requires that the provisions of each title must control "all matters and questions arising out of the subject matter of such title." Thus, the particular provisions of section 785 must be held to control the general language of section 580b.

That this is the proper interpretation of the section is demonstrated by several other rules of construction. While repeals by implication may occur under certain circumstances (*Assets Reconstruction Corp.* v. *Munson*, 81 Cal.App.2d 363 [184 P.2d 11]), such repeals by implication are never favored. (*Fay* v. *District Court of Appeal*, 200 Cal. 522 [254 P. 896]; *Rexstrew* v. *City of Huntington Park*, 20 Cal.2d 630 [128 P.2d 23].)

Moreover, the evils sought to be remedied and the purposes sought to be effected by the emergency legislation of 1933 and 1935 must be considered in construing section 580b. That section, and the related sections passed at the same time, were intended to prevent creditors from buying in property for a nominal sum, after the debtor had defaulted, and then holding the defaulting debtor for a large deficiency judgment. (See 22 Cal.L.Rev. 170, 180; *Hatch* v. *Security-First Nat. Bank,* 19 Cal.2d 254, 259 [120 P.2d 869]; *Winklemen* v. *Sides,* 31 Cal.App.2d 387, 409 [88 P.2d 147].) The 1935 amendment extended this protection to purchasers under a contract of sale. Undoubtedly, in private transactions, under this section there can be no deficiency judgment involving purchase money deeds of trust or mortgages, or contracts of sale. (*Mortgage Guarantee Co.* v. *Sampsell,* 51 Cal.App.2d 180, 185 [124 P.2d 353]; *Peterson* v. *Wilson,* 88 Cal.App.2d 617, 631 [199 P.2d 757, 6 A.L.R.2d 258].) But none of the evils sought to be overcome by section 580b existed in the case of partition or other types of judicial sales. The natural and normal construction of section 580b is that it only applies to contracts of sale where credit is involved. In the instant case the order confirming both the original and second sales provided the sale was for cash. It would require a strained construction indeed to hold that section 580b, obviously aimed at private credit sales, was applicable to a cash judicial sale. It is significant, although not conclusive, that since 1935 no court, so far as our research discloses, has ever held that section 580b applies to judicial sales.

For these reasons we are of the opinion that section 580b of the Code of Civil Procedure has no application to sales held by virtue of section 785 of that code.

The order granting the new trial is affirmed.

Bray, J., and Schottky, J. pro tem., concurred.

A petition for a rehearing was denied August 25, 1950, and appellant's petition for a hearing by the Supreme Court was denied September 21, 1950.