[Civ. No. 28335. Second Dist., Div. Two. Aug. 19, 1965.]

KENNETH CARPENTER et al., Plaintiffs and Appellants, v. JOHN KILGOUR et al., Defendants and Respondents.

Owen E. Kupfer for Plaintiffs and Appellants.

Carl J. Mooslin for Defendants and Respondents.

ROTH, P. J.—Appellants (Carpenters) appeal from a judgment foreclosing a chattel mortgage and providing for a deficiency in respondents' favor; and from the order denying appellants' motion for a new trial.

The evidence and the findings show: Respondents Ruth Kilgour and her husband John (hereinafter referred to as Kilgours) resided on the Pacific Coast Highway in Malibu contiguous to property numbered 18803 Pacific Coast Highway, which numbered property is the subject of this litigation. Ruth, in March of 1959, persuaded her invalid sister, Elizabeth Kummer, to purchase the leasehold on 18803. The leasehold was improved with a residence in need of repair and improvements and was for a term which will expire on August 31, 1973.

Elizabeth completed the purchase in March of 1959, and both sisters then embarked upon a program of repairs and improvements for the residence which continued until July

of 1959, and probably for a short time thereafter. Elizabeth moved into 18803 in July of 1959 with her two adopted children.

The hope of the two sisters that they would be happier living close to each other, which impelled the move, was quickly dissipated. Elizabeth and her adopted children returned to Elizabeth's house in North Hollywood in September of 1959.

The repairs and improvements to the residence at 18803 were substantial, but there is a considerable conflict in the evidence whether all the money expended for the same came from the funds of Elizabeth or whether part came from the funds of Ruth and John.

The trial court found upon ample evidence that "a substantial" part of the funds used came from Ruth and John.

When Elizabeth left 18803 in September of 1959 there was, of course, the problem of what to do with the premises. Kenneth and Frances Carpenter were long-time friends of both sisters. This problem of the vacant premises was resolved by an oral agreement between the sisters and the Carpenters. In consideration of completion by the Carpenters of the program of repair, alteration and improvement originally projected by the sisters, it was agreed that the Carpenters could take and remain in possession of 18803 with the understanding that if Elizabeth should thereafter change her mind and desire to reoccupy 18803, the Carpenters would surrender possession and would receive from Elizabeth and/or the Kilgours all monies which the Carpenters had expended in making alterations and improvements on the property.

On September 16, 1959, at or about the same time as the said oral agreement, Elizabeth transferred to the Kilgours title to the residence built on 18803. The transfer instrument delivered to the Kilgours was on a grant deed form. The Kilgours considered it invalid and were loath to accept it since they hoped that Elizabeth would eventually return and occupy 18803. Thereafter, on September 23, 1959,—why does not appear—Elizabeth requested a real estate broker to prepare a bill of sale on a bill of sale form—covering the residence on 18803, and had her son George drive her to a notary public who acknowledged her signature. George then, pursuant to his mother's request, drove to the residence of the Kilgours, who were absent, and left the said bill of sale on the table in the dining room. The Kilgours were unable to

produce this bill of sale at the trial, as it had unexplainedly disappeared. There was the direct evidence of the broker, the notary and the son, of its execution and delivery as herein detailed.

Carpenters went into possession of 18803 approximately the middle of September 1959, made improvements and alterations there and remained in possession without the occurrence of any incident material to this lawsuit until some time between January and March 1960.

At some time between those months conversations were had between the Carpenters and the Kilgours. Elizabeth had indicated no desire to return to the premises and as she died on June 16, 1960, it may be assumed that her condition had deteriorated and that the Kilgours and the Carpenters had reached at least a tentative conclusion that Elizabeth would never reoccupy the premises. This conclusion is fortified by the fact that between December 1959 and February 26, 1960, conversations were had between Elizabeth and the Carpenters which resulted in an assignment of the leasehold on 18803 as distinguished from the residence and building,[1] from Elizabeth to the Carpenters on February 26, 1960.

The subject of the January-March conversations between the Carpenters and Kilgours which inevitably were concurrent with the conversations between the Carpenters and Elizabeth, concerned the situation of the Carpenters who had made improvements on the residential structure but had no title to the structure. These conversations culminated on March 4, 1960, approximately, it will be noted, one week after the Carpenters had acquired the assignment of the leasehold from Elizabeth. On March 4, 1960, Kilgours transferred by bill of sale to the Carpenters, the residence here in issue, for a consideration of a promissory note in the principal sum of $9,000, payable in monthly installments of $60, commencing on March 15, 1960, and continuing thereafter until paid. The note required no downpayment, no interest and accelerated at the option of the holder in the event of default. It also provided for costs and reasonable attorney's fees in the event suit was brought to enforce collection. The note was secured by a chattel mortgage on 18803. This transaction was consummated even though the Carpenters claimed, as will be noted from allegations in their complaint in the action at bench, that they had in fact acquired title to the

---

[1]The lease provided that the house was severable from the land upon expiration of the lease.

dwelling from Elizabeth in September 1959, almost concurrently with the date they took possession.

The Carpenters paid all installments due from March 15, 1960 to October 15, 1962, a total of 34 installments. They have been in default since that date. On or about November 15, 1962, the Carpenters subleased 18803 for $190 per month and have been collecting said rental since said date.

By answer and cross-complaint to the complaint of the Carpenters, Kilgours alleged in the form of ultimate fact the evidentiary circumstances herein recited which were thereafter transmitted into findings of fact by the trial court. The trial court, among other findings, found specifically that the Carpenters defaulted on the note on November 15, 1962; that the unpaid balance due thereon was $6,960, with interest thereon at 7 per cent per annum from that date.

The complaint of the Carpenters was filed on January 23, 1963, in three causes of action, for declaratory relief, cancellation of an instrument, return of monies paid and damages for fraud. In pertinent part, the Carpenters alleged, that in September 1959 Elizabeth agreed to assign to them a lease of the 18803 land and the improvements thereon, and that she executed a document to that effect, but before they had an opportunity to cure an inadvertence in the document, she became ill, was in a comatose condition and soon thereafter died. The Kilgours at a later time, on or about March 4, 1960, represented knowingly and falsely that they were the owners of the residence on 18803, and offered to sell the residence to them. In reliance upon the representation that Kilgours were the owners of the residence, and in spite of their allegation that Elizabeth had already transferred the dwelling to them, Carpenters executed the note and chattel mortgage heretofore described.

The Carpenters, at the trial, claimed that they owned the leasehold and the residence and to support their claim of ownership of the residence on 18803, introduced a bill of sale to the premises executed in their favor by Elizabeth Kummer on September 23, 1959. This bill of sale was on its face an altered document. The name of the original grantees had been erased and the name of the Carpenters inserted. The trial court found this altered bill of sale legally insufficient to pass title to the residence.

The Carpenters alleged further that they first discovered that respondents had no title to the residence in January of

1963, and that therefore the note and chattel mortgage were without consideration.

The cross-complaint of Kilgours sought foreclosure of the chattel mortgage. It was alleged that Carpenters had sold 18803 to an unknown third person in violation of the terms of the mortgage, and had informed the Kilgours that they would not make the payments called for by the promissory note for the month of January 1963 or thereafter.

The trial court concluded that Kilgours were the owners of the residence at the time they conveyed it to Carpenters; that Carpenters defaulted on their note; that transaction between Kilgours and Carpenters was fair and equitable, untainted by fraud and that Carpenters were indebted to Kilgours in the amount heretofore stated and that Kilgours were entitled to a foreclosure of the chattel mortgage and to a deficiency.

The issues raised by the pleadings were essentially questions of fact which were decided adversely to the appellants' allegations. On each case the findings of fact in support of the trial court's conclusions are supported by substantial evidence. Appellants, however, raise numerous legal contentions on appeal in digression from what was and remains a factual dispute.[2]

Appellants contend that the court, although it found that the transfer between Elizabeth and the Kilgours was supported by consideration, failed to find on the issue of the consideration for the note, and found upon insufficient evidence, that the original debt between appellants and respondents was $9,000.

Neither point is meritorious.

■ The sole issue of consideration framed by the pleadings was whether there had been a failure of consideration induced by respondents' fraud in conveying property to which they had no title. As indicated above, the court found on substantial evidence that the Kilgours had title to the house on March 4, 1960. The sale of the house was therefore supported by consideration, and a finding of fact on this issue was sufficiently made in the trial court's finding number "18" wherein the court found that the appellants' allegations of no consideration were not true. Appellants were allowed to plead and prove that they received no consideration for their note (*Doyle* v. *Doyle*, 44 Cal.App. 259 [186

---

[2]Appellants frame their contentions on the concededly equitable nature of the proceedings. However, they do not mention the well-settled equitable rule of "clean hands."

P. 188]), or that the actual amount of the indebtedness is less than the face of the note. (*Powell* v. *Johnson,* 50 Cal. App.2d 680, 683 [123 P.2d 875].) ██ Notwithstanding their argument to the contrary, however, mere inadequacy of consideration in and of itself is no defense to a mortgage voluntarily made. (*Riegel* v. *Wollenshlager,* 49 Cal.App. 300 [193 P. 160].)

██ The evidence was also sufficient to support the finding that appellants owed the Kilgours $9,000, less the amount already tendered under the promissory note. A presumption that the amount owed was $9,000 arose from the note itself. (*Moore* v. *Gould,* 151 Cal. 723 [91 P. 616].) Evidence to the contrary merely raised a question of fact for the court (*Mar Shee* v. *Maryland Assur. Corp.,* 190 Cal. 1 [210 P. 268]), which the court resolved against appellants.

██ Appellants also contend that the court erred in foreclosing the mortgage, honoring the acceleration clause, and awarding a deficiency where the evidence failed to show, as concluded by the court, that the transaction was fair and equitable.

They contend that the doctrine of *Bisno* v. *Sax,* 175 Cal. App.2d 714 [346 P.2d 814], is applicable.

In *Bisno, supra,* this court held after a lengthy review of the authorities, that a court of equity will relieve a mortgagor from the effects of an acceleration clause in a mortgage "when confronted with genuinely equitable grounds therefor. . . ." (P. 726.) In that case the appellants were subjected to an acceleration clause in a trust deed after default even though they had tendered all arrearages of principal and interest to the beneficiary of the trust deed and even though the beneficiary had accepted such payments. It was not specifically held in that case that an acceleration clause in a mortgage by definition and as a matter of law constitutes a forfeiture, rather we held that under the facts of that case "whether it be deemed a forfeiture or not; that basic equi table principles so demand" relief from the acceleration clause. (P. 730.)

In the case at bench appellants presented no evidence comparable to that presented in *Bisno* which would lead to the conclusion that respondents were enforcing the acceleration clause by way of a penalty. On the contrary, the record clearly shows that appellants were in actual breach of their promissory obligation and had told respondents that they had no intention of making any payments after October 1962.

 Finally, appellants contend that the trial court erred in denying their motion for a new trial. Two principal contentions are raised in this respect. Appellants argue that new evidence in respect of consideration was produced on their motion for new trial which warranted the granting of the motion; and that appellants were the victims of "accident and surprise" when their attorney failed to appear at the hearing on the settlement of the findings of fact.

 It is well settled that the evidence produced in support of a motion for new trial on the ground of newly discovered evidence must be material to the moving party's case in the sense that it is likely that the evidence will produce a different decision. (*Waer* v. *Waer*, 189 Cal. 178 [207 P. 891].) The newly discovered evidence that appellants presented upon their motion, was evidence taken from creditors' bills filed by respondents in the Estate of Elizabeth Kummer, which indicated that they had invested less in the house than they told appellants.[3]

This evidence was clearly irrelevant to the issue of failure of consideration that was actually before the court.

 Subsequent to the oral decision of the court but prior to the entry of written findings of fact and conclusions of law, appellants dismissed their trial counsel and retained new counsel to present objections to the proposed findings. Appellants' new counsel failed to appear at the hearing to contest the findings and to present appellants' proposed special findings. This clearly placed appellants in a position of injury without any negligence on their part. (*Kauffman* v. *De Mutiis*, 31 Cal.2d 429, 432 [189 P.2d 271].) However, appellants were not prejudiced thereby. As indicated above, the findings of the trial court were not insufficient or ambiguous and appellants' proposed special findings were merely contradictory to the findings already before the court.

Although the trial court entered a deficiency judgment in respondents' favor, the question of the propriety of a deficiency judgment was not raised in the trial court. The residence here in dispute was on leased land. The lease clearly provided that the residence was severable from the land. It was therefore personal property. We have been cited to no case and know of none which extends the provisions of Code

---

[3] An equal inference to be drawn from the claims was that respondents demanded less because of the reimbursement gained by respondents from their sale of the house.

of Civil Procedure section 580b in respect of deficiency to personal property.

The judgment and order are affirmed.

Herndon, J., and Fleming, J., concurred.