[Civ. No. 29885.   Second Dist., Div. Two.   Aug. 10, 1966.]

MARION SYREK et al., Plaintiffs and Appellants, v. MELVIN J. GOULD et al., Defendants and Respondents.

Domke, Bedworth & Heinzelman and Wilfrid J. Bedworth for Plaintiffs and Appellants.

Rouse & Warner and Emanuel Warner for Defendants and Respondents.

HERNDON, J.—Plaintiffs Marion and Harriette Syrek and George and Clara Purser appeal from the judgment entered against them in this action wherein they seek to recover the balances owing on two promissory notes executed by respondents Melvin and Helen Gould and secured by deeds of trust. Since all the pertinent facts were presented to the trial court by way of stipulation, the sole issue presented for consideration is one of law: whether or not the trust deeds are "purchase money" in character within the meaning of section 580b of the Code of Civil Procedure. We hold that the trial court erred when it answered this question in the affirmative.

In February of 1963, appellants Syrek and Purser owned lot 18 of tract 26576 located in the County of Los Angeles. Appellants Syrek also owned the contiguous lots numbered 19 and 20. On February 19, 1963, respondents Gould purchased these three lots from appellants for $7,500 each. They paid $2,500 of

the purchase price for each lot in cash and gave their notes and trust deeds for the balances, i.e., a $5,000 note secured by a trust deed on lot 18 was given to the Syreks and Pursers jointly, and a $10,000 note secured by a trust deed on lots 19 and 20 was given to the Syreks alone. Each of these notes provided that payment in full could not be made prior to January 2, 1965. The purchase money trust deeds were subordinated to three deeds of trust on lots 18, 19 and 20, respectively, in the amounts of $21,200 each. These senior encumbrances represented security for loans obtained by the Goulds for the purpose of constructing residences upon the lots.

On October 10, 1963, respondents Gould had completed construction of the residences on the lots and had made arrangements to sell lots 18 and 19. In order to consummate this sale, respondents Gould offered to pay appellants $10,000 in exchange for reconveyances by which appellants would relinquish their security interests in lots 18 and 19. Appellants, however, not wishing to receive payment prior to the agreed date of January 2, 1965, declined to accept advance payment but expressed their willingness to accommodate respondents by reconveying their security interests in lots 18 and 19 and accepting respondents' note for $10,000. Respondents Gould stated that appellants should have some security for their new note and told them they would take care of it.

In due course, the parties executed escrow instructions pursuant to which appellants executed reconveyances relinquishing their security interests in lots 18 and 19 and received two new notes dated October 17, 1963, in the amounts of $5,000 and $10,000 secured by trust deeds upon the only remaining lot, namely, lot 20.[1] Shortly thereafter respondents defaulted in their payments on these two notes and also on the $21,200 note to which appellants' trust deeds had been subordinated.

Respondents contend that they incurred no personal liability when they executed the two new notes because appellants, in agreeing to a diminution of their security, also agreed in

[1]Unlike the prior trust deeds, the later trust deeds contained the inaccurate statement that ''This Deed of Trust is given to secure a portion of the purchase price of the property described herein.'' Such statement being unauthorized by appellants and being wholly false as to the $5,000 note given to the Syreks and Pursers jointly, and partially false as to the $10,000 note given to the Syreks alone, the trial court should have granted appellants' prayer for reformation by striking this provision from the new trust deeds. However, this error is basically moot since the properties have now been sold by stipulation of the parties and it is clear that the trial court did not rely upon this provision in the trust deeds in reaching its fundamentally erroneous conclusion herein.

legal effect to eliminate all of respondents' personal liability on said new notes because the obligations they represented initially had been for the purchase price of real property, although concededly two-thirds thereof had been *other* real property. Such contention is unmeritorious and finds no support either in the clear language of the legislative enactment upon which respondents' contentions are based or in the practical dictates of the reasons of policy underlying such enactment. At the time the new trust deeds were given, section 580b of the Code of Civil Procedure provided:

"No deficiency judgment shall lie in any event after any sale of real property for failure of the purchaser to complete his contract of sale, or under a deed of trust, or mortgage, given *to the vendor* to secure payment of the balance of the purchase price of real property, *or under a deed of trust, or mortgage, on a dwelling for not more than four families given to a lender to secure repayment of a loan which was in fact used to pay all or part of the purchase price of such dwelling occupied, entirely or in part, by the purchaser.*

"Where both a chattel mortgage and a deed of trust or mortgage have been given to secure payment of the balance of the combined purchase price of both real and personal property, no deficiency judgment shall lie at any time under any one thereof *if no deficiency judgment would lie under the deed of trust or mortgage on real property.*" (The italicized portions were added by Stats. 1963, ch. 2158, § 1, effective September 20, 1963. The unitalicized language represents section 580b as it stood at the time the initial trust deeds were executed in the instant case.)

It is immediately apparent that section 580b, as amended and as it read prior thereto, has no application whatsoever to the October 17, 1963, $5,000 note given to appellants Syrek and Purser jointly. This $5,000 indebtedness did not represent any portion of the balance of the purchase price on lot 20. Similarly, the new $10,000 note given to the Syreks alone clearly represented security for the balance of the purchase price on lot 20 only to the extent of $5,000.

Section 580b was extensively analyzed by our Supreme Court in the recent case of *Roseleaf Corp.* v. *Chierighino,* 59 Cal.2d 35, 41-43 [27 Cal.Rptr. 873, 378 P.2d 97]:

"Nor is Roseleaf's action barred by section 580b. That section bars any deficiency judgment after sale under a · purchase money mortgage or trust deed. Roseleaf would clearly be barred by section 580b from suing on the note secured by the first trust deed and chattel mortgage on the

hotel and its furnishings. That note, however, is not involved in this case, and the record discloses no default under it. The issue here is whether the three second trust deeds on land other than that purchased are purchase money trust deeds because they were 'given to secure payment of the balance of the purchase price of real property.'

"Section 580b was apparently drafted in contemplation of the standard purchase money mortgage transaction, in which the vendor of real property retains an interest in the land sold to secure payment of part of the purchase price. Variations on the standard are subject to section 580b only if they come within the purpose of that section.

"*Dobias* v. *White*, 239 N.C. 409, 412 [80 S.E.2d 23], held that a trust deed on land owned by the purchaser, given to secure payment of part of the purchase price of real property, is not a purchase money trust deed within the meaning of an antideficiency statute like section 580b. In that case, however, there was no analysis of the purpose of the applicable statute. Various purposes have been ascribed to section 580b. It has been said that it was designed to prevent creditors from buying in property for a nominal sum, after a debtor has defaulted, and then holding the debtor for the deficiency. (See *Kerrigan* v. *Maloof*, 98 Cal.App.2d 605, 616 [221 P.2d 153]; *Brown* v. *Jensen*, 41 Cal.2d 193, 201 [259 P.2d 425] [dissent].) This purpose, however, is accomplished by the fair-value sections, and does not explain for what purpose purchase money mortgages were singled out for special treatment. It has also been said that the purpose of section 580b is to make certain that in the case of 'a purchase money mortgage or deed of trust the security alone can be looked to for recovery of the debt.' (*Brown* v. *Jensen*, 41 Cal.2d 193, 198 [259 P.2d 425], quoting from *Mortgage Guarantee Co.* v. *Sampsell*, 51 Cal. App.2d 180, 185 [124 P.2d 353].) This conclusion states the effect of the statute after assuming that it applies, but offers no rationale for deciding whether or not it applies. In *Brown* v. *Jensen*, 41 Cal.2d 193, 197 [259 P.2d 425], it was stated that one reason for section 580b is that the one taking a purchase money trust deed knows the value of his security and assumes the risk that it may become inadequate. Perhaps the average vendor or financier in real estate transactions is more astute as to the value of his land than the average vendee, but it is doubtful whether that was the reason for barring deficiency judgments in purchase-money security transactions.

"Section 580b places the risk of inadequate security on the purchase money mortgagee. A vendor is thus discouraged from

overvaluing the security. Precarious land promotion schemes are discouraged, for the security value of the land gives purchasers a clue as to its true market value. (See Currie & Lieberman, *Purchase-Money Mortgages and State Lines: A Study in Conflict-of-Laws Method,* 1960 Duke L.J. 1, 33-34, 39-40.) If inadequacy of the security results, not from overvaluing, but from a decline in property values during a general or local depression, section 580b prevents the aggravation of the downturn that would result if defaulting purchasers were burdened with large personal liability. Section 580b thus serves as a stabilizing factor in land sales.

"There is no indication in the present case that the hotel was overvalued. The purchaser will not lose the property he purchased yet remain liable for the purchase price. To apply section 580b here would mean that the Chierighinos would acquire the hotel at less than the agreed price. Furthermore, if there is any merit in the theory that 'the vendor knows the value of his security and assumes the risk of its inadequacy,' that theory does not apply here. There is no reason to assume that Roseleaf had any greater knowledge of the value of the Chierighinos' land than did the Chierighinos." (Cf. also, *Bargioni* v. *Hill,* 59 Cal.2d 121, 123-124 [28 Cal.Rptr. 321, 378 P.2d 593].)

Similarly, in the instant case, if section 580b were held to be applicable to the $5,000 note given to the Syreks and Pursers jointly, and to the full extent of the $10,000 note given to the Syreks alone, respondents would be permitted to retain the proceeds of their sale of lots 18 and 19 without paying $10,000 of the agreed $15,000 purchase price therefor. Such a result obviously is not in accord with the legislative intent clearly enunciated in section 580b nor with the dictates of common justice. The full purpose and intent of the Legislature can be fulfilled by limiting the application of section 580b to that portion of the obligation represented by respondents' $10,000 note to the Syreks which represents the balance of the purchase price of lot 20, if any, that remained unpaid after the sale of lot 20 in accordance with the stipulation of the parties.

The judgment is reversed.

Roth, P. J., and Fleming, J., concurred.

A petition for a rehearing was denied August 31, 1966, and respondents' petition for a hearing by the Supreme Court was denied October 4, 1966.