[No. B102493. Second Dist., Div. Seven. Aug. 11, 1997.]

DONALD W. CONLEY et al., Plaintiffs and Respondents, v.
ROBERT C. MATTHES et al., Defendants and Appellants.

**COUNSEL**

Allan F. Grossman for Defendants and Appellants.

Richard R. Leuthold for Plaintiffs and Respondents.

**OPINION**

**JOHNSON, J.**—Appellants appeal from summary judgment granted in favor of respondents for the balance due on a promissory note secured by a second trust deed on two apartment buildings owned by appellants. The principal issues on appeal are whether respondents' action is barred by the antideficiency provisions of Code of Civil Procedure section 580b prohibiting deficiency judgments on purchase money notes and whether triable issues of fact exist regarding appellants' affirmative defense of misrepresentation.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

In the summer of 1987, appellants Robert C. Matthes, Martha E. Matthes, Edward D. Solomon and Roberta Solomon (collectively Matthes) made an offer to purchase two 12-unit apartment buildings located in Long Beach from respondents Donald W. Conley and Cynthia W. Conley (collectively Conley).[1] Both properties were then under construction. Matthes contends they were initially only interested in the apartment building located at 1748

---

[1]Conley's interest in the properties was held as "Donald W. Conley, as trustee, his successor or assigns of that certain Trust Agreement dated January 23, 1978 between Donald W. Conley and Cynthia Lee Conley, as trustors and trustees" (the Trust). The escrow instructions and settlement statement indicate the First Street property was owned by the Trust and Thomas and Kathryn Minahan (presumably as tenants in common); the Second

E. First Street in Long Beach (the First Street Property), but Donald Conley advised Matthes he would only sell the First Street Property in conjunction with another 12-unit building located at 1605 E. Second Street (the Second Street Property). Donald Conley disputes he marketed or sold the properties as a package, and instead claims Matthes wished to purchase the properties as a unit. Nevertheless, the written offer to purchase dated August 3, 1987, stated "Buyer will operate the two properties . . . as one business entity; therefore, acceptance of this offer is contingent upon the sale to buyer of both properties." The offer also provided for a 2.5 percent commission to Martha Matthes, a licensed real estate agent. Donald Conley, who was also a licensed real estate broker, acted on behalf of the sellers in the transaction.

On October 7, 1987, the parties entered into separate written escrow instructions for each property. Castlehead Escrow, Inc., handled both escrows. The First Street Property was sold for $1,265,875, with a first trust deed of $1,012.700 (80 percent of the purchase price) in favor of California Federal Savings Bank and a cash down payment of $253,175 (20 percent of the purchase price). The instructions stated "[t]his escrow is contingent upon the successful sale of 1605 E. 2nd St., Long Beach, CA, and escrow holder's receipt of buyer's and seller's signed escrow instructions [for the Second Street Property] shall be deemed satisfaction of this contingency." The escrow instructions for the Second Street Property were identical in all material respects, except they provided for a sales price of $1.1 million, with a first trust deed of $880,000 (80 percent of the purchase price) and a cash payment of $220,000 (20 percent of the purchase price). In addition, the instructions stated "As a Memorandum to This Escrow With Which Escrow Holder Shall Be Not Concerned, It Is Agreed Between the Parties Herein That: Seller will not carry a 2nd Deed of Trust."[2]

The escrow instructions for the First Street Property were amended on December 14, 1987, to provide "the contingency to have signed escrow instructions from buyer and seller on escrow no. 18036-R [the Second Street Property] is hereby eliminated."[3] The escrow on the First Street Property closed the next day, on December 15, 1987, but the closing of escrow on the

Street property was owned by the Trust, William Zures, and Randy Perkins (also presumably as tenants in common). The Trust owned a one-half interest in the First Street property and a one-third interest in the Second Street property. Conley has claimed that the seller of the Second Street property was a limited partnership known as DWC Investment Group IV, of which Donald Conley was a general partner.

[2]An amendment dated October 7, 1987, to the First Street Property escrow instructions also provided that "Seller will not carry a 2nd Deed of Trust."

[3]At the time of the purported removal of the contingency by this amendment, the contingency had already been satisfied by the signing of the October 7, 1987, escrow instructions for the Second Street Property. No explanation has been offered for this amendment, other

Second Street Property was delayed because construction was not yet complete on the building. In late January or early February, 1988, Matthes told Conley they would not be able to complete the sale of the Second Street Property because they were $80,000 short of cash. Donald Conley in his capacity as trustee of the Trust lent Matthes the $80,000 in exchange for a promissory note (the Note)[4] and a second trust deed; the $80,000 was deposited into the Second Street Property escrow.

The parties dispute whether they agreed at this time that the second trust deed would be recorded against the First Street Property rather than the Second Street Property. However, shortly before the close of escrow on the Second Street Property, Donald Conley informed Matthes he would record the second trust deed against the First Street Property although the loan had been made for the purchase of the Second Street Property. The parties agree Conley's reasons for recording the second trust deed against the First Street Property rather than the Second Street Property were that Matthes had more cash in the First Street Property and the First Street Property was a higher value property. The parties dispute whether Conley also told Matthes the reason for the switch was that Conley "did not want a purchase money note," or the $80,000 loan was a "hard money loan." Matthes asked Conley if this switch "would change anything" and Conley replied it would not. Matthes alleges he did not understand that this switch could affect the purchase money nature of the Note.

Due to a downturn in the real estate market and the California economy in general, Matthes were unable to meet their obligations on the First Street Property, and in April 1993, the holder of the first trust deed against the First Street Property foreclosed, wiping out Conley's interest in the property.[5] Thereafter, Conley brought this action to recover on the $80,000 Note.[6] Without conducting discovery, Conley moved for summary judgment on the grounds Code of Civil Procedure section 580b did not apply and Conley was entitled to judgment on the Note as a matter of law. Matthes opposed the summary judgment motion on the basis of two of their affirmative defenses: (1) the bar against deficiency judgments on purchase money notes under Code of Civil Procedure section 580b and (2) the existence of material issues of fact whether Donald Conley also acted as Matthes's agent in the sale and therefore breached his fiduciary duties to Matthes by failing to inform

---

than Conley's statement that "the buyer's obligation to purchase the 2nd Street property was now at their option."

[4]The Note was modified by an extension dated March 24, 1991.

[5]Matthes also lost the Second Street Property through foreclosure by the first trust deed holder at or about the same time.

[6]The action on the Note was not brought in the name of the Trust, but by Donald W. Conley and Cynthia Lee Conley.

Matthes of the possible negative effect of recording the second trust deed against the First Street Property instead of the Second Street Property. The trial court entered summary judgment in favor of Conley without stating its reasons for ruling therefor. Matthes timely appeals the trial court's grant of summary judgment.

On appeal, Matthes argues Conley's action is barred as a matter of law by the prohibitions against deficiency judgments in Code of Civil Procedure section 580b because the two sales in fact comprise one transaction, the substance of which was a vendor-financed carry-back purchase money loan. Alternatively, Matthes argues there are issues of fact relating both to the substance of the transaction and to Conley's alleged activities as an agent on Matthes's behalf that preclude summary judgment. Conley argues Code of Civil Procedure section 580b does not apply as a matter of law under the ruling of *Roseleaf Corp.* v. *Chierighino* (1963) 59 Cal.2d 35 [27 Cal.Rptr. 873, 378 P.2d 97] because the $80,000 Note was secured by property "other" than that which the $80,000 loan was used to purchase. Conley further argues under the facts of this case, application of section 580b would not serve the policies of the statute.

We agree with Matthes and conclude the substance of the transaction constituted a purchase money transaction although the note on one property was recorded against another property to the transaction. Therefore, Conley's deficiency action is barred by Code of Civil Procedure section 580b as a matter of law. ▮ ▮ ▮ Therefore, we reverse and remand with directions the trial court enter judgment in favor of Matthes.[7]

### DISCUSSION

#### I. *Standard of Review.*

▮ A trial court's grant of summary judgment is reviewed de novo for error. (*Donchin* v. *Guerrero* (1995) 34 Cal.App.4th 1832, 1837 [41 Cal.Rptr.2d 192].) Although the trial court is required to specify the reasons for its ruling, we will treat the trial court's failure to specify the reasons for its ruling as harmless error because we review the trial court's ruling, not its

---

[7]At oral argument, we requested the parties to brief the issue of whether this court could, in the absence of a summary judgment motion by respondents, direct that judgment be entered in their favor. Code of Civil Procedure section 43 provides that this court may "affirm, reverse, or modify any judgment or order appealed from, and may direct the proper judgment or order to be entered, or direct a new trial or other further proceedings to be had." Therefore, where it appears from the record as a matter of law there is only one proper judgment on undisputed facts, we may direct the trial court to enter that judgment. (*Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 440 [296 P.2d 801, 57 A.L.R.2d 914].)

rationale. (See Code Civ. Proc., § 437c, subd. (g); *Sachs* v. *FSR Brokerage, Inc.* (1992) 7 Cal.App.4th 950, 960-61 [9 Cal.Rptr.2d 306].)

## II. *Conley Was Not Entitled to Summary Judgment.*

### A. *The Sale of the First Street Property and the Second Street Property Is a Variation of the "Standard" Purchase Money Transaction That Comes Within the Policies of Code of Civil Procedure Section 580b.*

■ Matthes argues the Note constitutes a variation of the "standard transaction" and therefore comes within the policies of Code of Civil Procedure section 580b for several reasons. First, Matthes argues that although Donald Conley (as trustee) did not wholly own the properties and the properties are commercial buildings of more than four units, Donald Conley nevertheless is a vendor for purposes of section 580b because the loan he made was necessary to the consummation of the sale. Second, Matthes argues the purchase of the two properties constituted "one transaction" pursuant to Civil Code section 1642 even though there were separate escrows. Therefore the substance of the sales as a purchase money transaction mandates antideficiency protection regardless of the fact that the trust deed was recorded against different, but related property, than that securing the Note.

■ Generally, deficiency judgments are unavailable after a trustee's sale of property under a trust deed. (Code Civ. Proc., § 580d). Furthermore, creditors are precluded from suing directly on their notes by the "one-action rule," which requires the trust deed holder to resort to the security first. (Code Civ. Proc., § 726.) However, junior trust deed holders who are "sold out" by a senior's foreclosure sale are not precluded by the one-action rule or the trustee's sale bar to deficiency judgments from pursuing a separate action on their note unless the note constitutes a purchase money note. In that case, section 580b[8] automatically protects the debtor from a deficiency judgment in the "standard transaction"—those wherein the seller takes back a note secured by the property purchased. The limitation also applies to third party lenders on residential properties of four units or less. (Code Civ. Proc., § 580b; *Jackson* v. *Taylor* (1969) 272 Cal.App.2d 1, 4 [76 Cal.Rptr. 891] [describing 1963 amendment to section 580b permitting third party lenders to recover deficiencies on nonresidential properties of more than four units].)

---

[8]Code of Civil Procedure section 580b provides that: "No deficiency judgment shall lie in any event after a sale of real property . . . under a deed of trust or mortgage given to the vendor to secure payment of the balance of the purchase price of that real property . . . or under a deed of trust or mortgage on a dwelling for not more than four families given to a lender to secure repayment of a loan which was in fact used to pay all or part of the purchase price of that dwelling occupied, entirely or in part, by the purchaser."

However, the language of Code of Civil Procedure section 580b has been liberally construed to extend antideficiency protection beyond the standard transaction where the circumstances of the case indicate the policies of the statute will be served. (*Spangler* v. *Memel* (1972) 7 Cal.3d 603, 610 [102 Cal.Rptr. 807, 498 P.2d 1055].) Courts extending this protection have described section 580b as serving two main purposes: (1) discouraging speculative land sales and the overvaluation of properties, and (2) preventing the aggravation of economic downturns and declining property values that would result if purchasers who had lost their properties were also liable for the full purchase price. The vendor, who is presumed to know the value of the property, is therefore required to assume the risk the security may prove inadequate.

The factual scenarios to which Code of Civil Procedure section 580b has been applied are as varied as the ways in which a real estate transaction can be structured. In addition to considering the policies addressed by section 580b, if the substance of the transaction indicates it was essentially a purchase money transaction, courts will apply section 580b. For example, where properties of even value were exchanged and the seller made an additional $80,000 loan to cover potential cash flow shortages assumed by the buyer, and the loan was secured by second trust deeds on the properties sold, section 580b applied because the loan was necessary to the consummation of the sale and hence the seller intended to finance the purchase. (*BMP Property Development* v. *Melvin* (1988) 198 Cal.App.3d 526, 530-531 [243 Cal.Rptr. 715].) Similarly, where a broker took a second trust deed as security for payment of his commission, the buyer was protected from a deficiency judgment because the broker, in accepting the buyer's note, extended credit necessary to the sale that otherwise would have been extended by the seller. (*Bargioni* v. *Hill* (1963) 59 Cal.2d 121, 123-24 [28 Cal.Rptr. 321, 378 P.2d 593].)

Conversely, if the facts indicate the property has not been overvalued, the vendor is not in a better position than the purchaser to know its value, or the purchaser will not lose the property and remain liable for the purchase price, none of the evils of a deficiency judgment is present and protection will be denied. (*Roseleaf Corp.* v. *Chierighino, supra*, 59 Cal.2d 35, 42-43 [seller taking second trust deed on property unrelated to the sales transaction had no better idea of the value of the property than buyer].) Similarly, in *Spangler*, antideficiency protection was denied on a commercial development with a subordinated construction loan because the value of the property sold depended on the success of the future development. In that case, it would be unfair to place the risk on the seller because the success of the commercial venture depended on the developing purchaser. (*Spangler* v. *Memel, supra*, 7 Cal.3d 603, 613.)

### B. The Undisputed Facts Demonstrate the Second Street Property Note Was a Purchase Money Note.

#### 1. *Donald Conley is a vendor for purposes of Code of Civil Procedure section 580b.*

██ A threshold issue is whether Donald Conley was the vendor of the properties although the properties were co-owned with other individuals. Code of Civil Procedure section 580b limits purchase money antideficiency protection on commercial properties (those of more than four units) to "vendor" financing. Thus, if Donald Conley was a "third party" lender—essentially a stranger to the transaction—by its terms section 580b would not apply to a 12-unit apartment building and the issue of whether the Note was in fact purchase money would be immaterial. ██ However, courts will interpret "vendor" broadly if to do so will further the purposes of section 580b; therefore a "vendor" under section 580b need not have virtual identity with the actual seller of the property.

The critical factors in determining vendor status are the degree of the lienholder's participation in the sale and whether the financing the lienholder provided was necessary to the consummation of the sale. (*Constanzo* v. *Ganguly* (1993) 12 Cal.App.4th 1085, 1090-1091 [16 Cal.Rptr.2d 55].) Therefore vendor status was found in a transaction where the original purchase money loan was refinanced to facilitate a sale of the property and the holder of the first in this refinancing then took back a second trust deed. Although not the legal owner of the property, the lienholder was nevertheless a vendor for purposes of Code of Civil Procedure section 580b because his participation and financing was necessary to the sale. (*Shepherd* v. *Robinson* (1981) 128 Cal.App.3d 615, 623 [180 Cal.Rptr. 342]; accord, *Jackson* v. *Taylor, supra,* 272 Cal.App.2d 1, 5-6.)

██ Donald Conley's nexus to the transaction precludes a finding he was not a "vendor" for purposes of Code of Civil Procedure section 580b. Donald Conley was Matthes's primary contact with the sellers. Donald Conley marketed the buildings to Matthes (whether as a package or not), assisted Matthes in obtaining financing from California Federal Bank for the first trust deeds on the properties. Further, the facts indicate the Note was necessary to the consummation of the sale. Matthes told Donald Conley the sale of the Second Street Property could not close because Matthes was short $80,000 in cash. Donald Conley loaned Matthes the funds in order to complete the sale. The only reasonable inference we can draw from Donald Conley's loan of $80,000 is that Conley did intend to finance the purchase of the property. Therefore, Donald Conley is a vendor. (*Bargioni* v. *Hill, supra,* 59 Cal.2d 121, 123-124.)

> 2. *The $80,000 Note constituted a purchase money loan because the sales of the First Street Property and the Second Street Property were essentially one transaction and Conley's second trust deed was not recorded on "other" property foreign to the transaction.*

Matthes argues the facts demonstrate the two purchases actually constitute one transaction. If viewed as one transaction, Conley's act of recording the trust deed against the First Street Property does not take the transaction outside the scope of section 580b because the two sales are so closely related the "other" property is not really "other." Matthes argues the transaction is thus a permissible variation on the standard transaction and the trust deed should be treated as if it had been recorded on the Second Street Property, which would reflect its true character as a purchase money note qualifying Matthes for antideficiency protection. (See *BMP Property Development* v. *Melvin, supra*, 198 Cal.App.3d 526, 531 [where two contracts were related to the same transaction, under Civil Code section 1642 they were read together for purpose of Code of Civil Procedure section 580b].)

Conley counters the facts of this case are squarely within the holding of *Roseleaf Corp.* v. *Chierighino* because the loan for the Second Street Property was secured by a deed of trust against the First Street Property. In *Roseleaf,* the buyer purchased a hotel property and gave the seller a note secured by several junior trust deeds against unrelated property already owned by the buyer. When this other property went into foreclosure, the seller's junior trust deeds were wiped out and he thereafter sued to recover the deficiency owing on the promissory note. In refusing to apply Code of Civil Procedure section 580b, the court noted "[t]here is no indication in the present case that the hotel was overvalued. The purchaser will not lose the property he purchased yet remain liable for the purchase price. To apply section 580b here would mean that the [buyer] would acquire the hotel at less than the agreed price. . . . [Further,] [t]here is no reason to assume that [the seller] had any greater knowledge of the value of the [other property] than did the [buyer]." (*Roseleaf Corp.* v. *Chierighino, supra*, 59 Cal.2d at pp. 42-43.) Conley argues not only was the First Street Property "other" property, but the other rationales of section 580b are not present here: there is no indication the Second Street Property was overvalued; Matthes will not lose the property yet remain liable for the purchase price; to apply section 580b would mean that Matthes would acquire the Second Street Property at less than the agreed purchase price; and there is no reason to assume that Conley had greater knowledge of the value of the Second Street Property.

Conley's argument is misplaced, however. First, *Roseleaf* does not control merely because the second trust deed was recorded on "other" property.

*Roseleaf* itself points out application of Code of Civil Procedure section 580b is required if the circumstances of the case indicate the purposes of the statute will be served. (59 Cal.2d at p. 41.) Looking beyond the form of the transaction to its substance, it is apparent circumstances warranting application of section 580b are present here. (*Scott* v. *Fidelity Dev. Co.* (1974) 39 Cal.App.3d 131, 135 [113 Cal.Rptr. 855] [in analyzing real estate transaction of purposes of section 580b, substance of transaction controls over its form].)

The facts of this case are distinguishable from *Roseleaf* because the "other" property in *Roseleaf* was completely foreign to the transaction. Here, Matthes has contended the properties were marketed and purchased as a package, and the undisputed facts show the properties were indeed sold at the same time by the same seller to the same buyer. The offer to purchase addressed both properties. Simultaneous escrows were opened. One set of the escrow instructions referenced the other set. Conley obtained financing from the same lender for Matthes for first trust deed financing on both of the properties. The escrow on the First Street Property closed first because construction was already completed. The only real difference in the sales of the two properties is that Matthes lacked $80,000 to close the deal on the Second Street Property; the $80,000 loan was essential to Matthes's purchase of the property. (*See BMP Property Development* v. *Melvin, supra,* 198 Cal.App.3d at pp. 531-532.)

Donald Conley also claims he had no better idea than Matthes of the value of the Second Street Property and there is no indication it was overvalued. Yet Donald Conley must have had some superior knowledge of the Second Street Property's value, as demonstrated by his refusal to record the second trust deed against the Second Street Property and his statements he did not want a "purchase money" loan and he wanted to record the trust deed against the First Street Property because Matthes "had more money in it" and it was "a higher value property." Furthermore, Conley was the seller of both properties and thus knew their values (as well as his relative interests in the properties). (Cf. *Goodyear* v. *Mack* (1984) 159 Cal.App.3d 654, 659 [205 Cal.Rptr. 702] [because the junior lienholder's trust deed was recorded on buyer's property that was alien to the sales transaction, seller had no better idea of that property's value than the buyer].) Further, Matthes has lost both properties and therefore is not in a position where Matthes will be able to retain the Second Street Property while not being liable for its purchase price, nor will Matthes acquire the Second Street Property at less than its purchase price.

On the contrary, the undisputed facts of the two sales show there was essentially one transaction and the transaction was purchase money in

character. The recordation of the deed on the Second Street Property and Donald Conley's statements he allegedly told Matthes the loan was "hard money" cannot transmute the essential character of the transaction as a purchase money transaction.[9] Further, Code of Civil Procedure section 580b's policies will be served by its application in this case to deter overvaluation and speculation at the expense of buyers of property.

Finally, Conley attacks Matthes's argument on the grounds it amounts to the impermissible admission of parol evidence to contradict or vary the explicit terms of the agreement (the escrow instructions, offer, Note and trust deed). Conley argues Matthes cannot be permitted to introduce evidence of any purported agreement the Second Street Property Note was actually "purchase" money (even though it was recorded against the First Street Property) because this is inconsistent with the terms of the written agreements (i.e., the escrow instructions and amendments which expressly state the seller will give no second trust deeds). (See *BMW of North America, Inc.* v. *New Motor Vehicle Bd.* (1984) 162 Cal.App.3d 980, 990 [209 Cal.Rptr. 50].)

However, the parol evidence rule does not apply here as Conley suggests. The fact the parties later agreed, after entering into the written agreements, to a second trust deed does not amount to the impermissible introduction of parol evidence contradicting the terms of the (integrated) written agreements there would be no second trust deeds.[10] (*Marani* v. *Jackson* (1986) 183 Cal.App.3d 695, 699, fn.2 [228 Cal.Rptr. 518] [parol evidence only excludes extrinsic evidence of prior or contemporaneous oral agreements, not subsequent oral agreements].) ■ The parties to a written agreement may modify it by an *executed* oral agreement. The written contract remains in effect to the extent it has not been modified. (Civ. Code, § 1698, subds. (b), (c) [a contract in writing may be modified by an oral agreement to the extent the oral agreement is executed by the parties and is supported by consideration].) Oral modifications of written agreements are precluded only if the written agreement provides for written modification. (*Marani* v. *Jackson, supra,* at p. 704.)

---

[9] In fact, Donald Conley recognizes the purchase money nature of transaction in his second supplemental declaration filed in support of the motion for summary judgment, wherein he states, "I deposited $80,000 for the 'hard money' loan that I made to defendants [Matthes], *in order that they be able to purchase the 2nd Street property*" (italics added).

[10] The two copies of the escrow instructions in the record do not contain an integration clause, nor do they contain a provision restricting modifications to written modifications. The instructions do make reference to terms and conditions on the reverse side of the printed form, which was not included in the copies in the record. The reverse side of the escrow instructions may contain standard boilerplate contract terms, including these clauses. However, these provisions are not before the court.

■ The distinction here barring application of the parol evidence rule is that the oral agreement has been *executed.* Because the parties did agree to the exchange of the Note and second trust deed in consideration of Donald Conley's loan of $80,000 cash, this conduct amounts to an executed oral modification of the writings between the parties to which the parol evidence rule would not apply. Thus the provision in the escrow instructions precluding second trust deeds is deemed stricken from those agreements. Furthermore, Conley cannot at the same time argue Conley is entitled to the benefits of the second trust deed and Note yet say that very same trust deed and Note are precluded by the written agreements. Whether or not the escrow instructions contained a clause precluding modification except by a writing, by accepting the benefits of the modification, Conley is estopped from arguing it is barred by the parol evidence rule. (*Wagner* v. *Glendale Adventist Medical Center* (1989) 216 Cal.App.3d 1379, 1388 [265 Cal.Rptr. 412].)

3. *Given the purchase money nature of the note, even the parties' agreement to record the trust deed on "other" property does not waive the protections of Code of Civil Procedure section 580b.*

If Conley's second trust deed had been recorded against the Second Street Property, there would be no dispute this was a "standard" transaction to which Code of Civil Procedure section 580b would have applied automatically. By getting Matthes's agreement to record the second trust deed against the First Street Property, Donald Conley attempted to circumvent the clear protections of Code of Civil Procedure section 580b, a conclusion that is also supported by his statements he did not want a "purchase money" trust deed. However, given the fundamentally purchase money nature of the Note, Matthes's agreement to this recordation amounted in fact to a waiver of their section 580b antideficiency protection. Such waivers are against public policy. (See *Palm* v. *Schilling* (1988) 199 Cal.App.3d 63, 76 [244 Cal.Rptr. 600] [allowing purchase money creditor to circumvent rule against waivers of section 580b in exchange for other concessions would flaunt purpose of rule].)

Due to the essentially purchase money nature of the Note and the fact the First Street Property was not foreign to the transaction, were we to accept Conley's argument and rule the recordation of the second trust deed against the First Street Property instead of the Second Street Property resulted in a relinquishment of Matthes's antideficiency protection, our ruling would fly in the face of the statute's purposes. Therefore, whether or not Matthes made an informed decision to permit the second trust deed to be recorded against the First Street Property, such an agreement cannot be countenanced under the circumstances. (See *Ziegler* v. *Barnes* (1988) 200 Cal.App.3d 224, 230

[246 Cal.Rptr. 69] [because vendee could not by contract waive Code of Civil Procedure section 580b protection, court refused to enforce agreement for vendor's benefit which purported to pass purchase money through third party].)

Therefore, we conclude that although the $80,000 loan was made to facilitate the purchase of one property (the Second Street Property) and the trust deed securing that loan was recorded against the other property (the First Street Property) to the transaction does not preclude application of Code of Civil Procedure section 580b where the circumstances indicate the statute's policies will be served. Because section 580b operates as a bar to Conley's action, we need not address whether factual issues exist with respect to Matthes's affirmative defense of misrepresentation.

## DISPOSITION

The summary judgment in favor of respondents is reversed. The action is remanded with directions the trial court enter judgment in favor of appellants, and for a determination and award of reasonable attorneys' fees and costs to appellants. Appellants are to be awarded costs on appeal.

Lillie, P. J., and Woods, J., concurred.

Respondents' petition for review by the Supreme Court was denied October 22, 1997.