Filed 12/18/13  Ghilotti Brothers v. Monahan Pacific CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| GHILOTTI BROTHERS, INC., <br><br>     Plaintiff, Cross-defendant and Respondent, <br><br> v. <br><br> MONAHAN PACIFIC CORPORATION, et al., <br><br>     Defendants, Cross-complainants and Appellants. | A129562 <br><br> (Marin County <br>   Super. Ct. No. CV060168) |


Ghilotti Brothers, Inc. (Ghilotti) sued defendants Larkspur Capital Partners, LLC (Larkspur Partners) and Monahan Pacific Construction Corporation (Monahan Construction), seeking damages for breach of contract relating to certain work performed by Ghilotti on the Drake's Cove project site in the City of Larkspur.  Larkspur Partners and Monahan Construction jointly cross-claimed against Ghilotti seeking damages for gross negligence, breach of contract, negligence, deceit, and contractual indemnification. Monahan Pacific Corporation (Monahan), the managing member of Larkspur Partners, filed a separate cross-action against Ghilotti seeking damages for gross negligence, breach of contract, and contractual indemnification.  After a jury rendered a verdict in favor of Ghilotti on its claim of breach of contract, the court entered an amended judgment on November 12, 2010, awarding Ghilotti the principal sum of $1,065,438.36, and prejudgment interest of $500,234.50.  The court entered a separate order on November 12, 2010, dismissing Monahan's cross-action against Ghilotti.

1

On their appeals Larkspur Partners, Monahan Construction, and Monahan seek reversal based on the trial court's rulings on two motions in limine. We conclude the trial court properly granted Ghilotti's motion in limine to strike Monahan's cross-action on the ground Monahan lacked standing to pursue a tort claim of gross negligence against Ghilotti. We also conclude the trial court did not err in denying the motion in limine by Larkspur Partners and Monahan Construction seeking to bar parol evidence concerning the terms of the Ghilotti/Monahan Construction standard form contract. Accordingly, we affirm the order of dismissal of Monahan's cross-action against Ghilotti, and the amended judgment in favor of Ghilotti.[1]

## FACTUAL AND PROCEDURAL BACKGROUND[2]

"[S]ince well before 2003," Monahan, the managing member of Larkspur Partners, a limited liability company, has been engaged in building a residential subdivision on the Drake's Cove project site that was owned by Larkspur Partners. Monahan entered into an agreement with Monahan Construction, a separate entity and licensed contractor, to develop the project site. Thereafter, in May 2004, Monahan Construction entered into a subcontract with Ghilotti in which Ghilotti agreed to perform certain work at the project site, including grading, paving, and the installation of certain utilities, which agreement was later modified by a written change order No. 3. Ghilotti entered into a "second tier subcontract" with another contractor to remove trees, stumps, and brush from the project site.

At trial Ghilotti contended Monahan Construction breached the parties' May 2004 contract, as modified by change order No. 3, by failing to pay it for amounts due and owing for work performed on the project site. Monahan Construction contended Ghilotti

---

[1]    The amended judgment entered November 12, 2010, superseded a judgment entered June 8, 2010, and an order entered August 9, 2010. Accordingly, we dismiss appellants' separate appeals from the judgment entered June 8, 2010, and the order entered August 9, 2010.

[2]    We set forth only those facts as are necessary to resolve the issues raised on this appeal.

breached the parties' agreements by failing to timely perform the work pursuant to the contract terms and by negligently performing the work. Larkspur Partners contended that although it was not a party to the Ghilotti/Monahan Construction agreements, it was entitled to damages as an intended third-party beneficiary.

The jury returned a verdict in favor of Ghilotti on its breach of contract claim against Larkspur Partners and Monahan Construction, and found no merit to the breach of contract claim by Larkspur Partners and Monahan Construction against Ghilotti. The jury also found Ghilotti was negligent but its negligence was not a substantial factor in causing harm to Larkspur Partners and Monahan Construction.

## DISCUSSION

### I. Trial Court's Grant of Ghilotti's Motion in Limine to Dismiss Monahan's Cross-Action for Gross Negligence

#### A. *Relevant Facts*

Before trial Ghilotti filed a motion in limine seeking to strike Monahan's cross-action for lack of standing to sue on the ground that Monahan's alleged injuries "flow[ed] to the limited liability company [Larkspur Partners], as owner/developer, and not to its managing member." Monahan opposed the motion, arguing it had standing to seek to recover for its own losses caused by Ghilotti's alleged "negligence, grossly intentional conduct."

The trial court granted the motion in limine to strike Monahan's cross-action. In so ruling, the court explained: "This isn't a slander action. This is, more or less, a contract action. I don't think Monahan Pacific Corporation does have standing to pursue any claims in this lawsuit. [¶] Its only allegations are that it's the managing member of Larkspur Capital Partners. Larkspur Capital Partners, certainly, has standing to prosecute this lawsuit . . . . [¶] As an LLC, Monahan Pacific Corporation does not own Larkspur Capital's assets. It lacks standing to sue in its own behalf for claims belonging to Larkspur Capital Partners."

## B.     Analysis

Monahan seeks reinstatement of its cause of action for gross negligence, arguing it has standing to assert that claim on its own behalf against Ghilotti and its claim was not a derivative one that belonged only to Larkspur Partners. We disagree, and conclude the trial court properly dismissed Monahan's cross-action for lack of standing to sue Ghilotti.

"In 1994, the Legislature enacted Corporations Code sections 17000-17655 governing limited liability companies. The law incorporates provisions of the Corporations Code. [¶] 'A limited liability company is a hybrid business entity formed under the Corporations Code and consisting of at least two 'members' [citation] who own membership interests [citation]. The company has a legal existence separate from its members. Its form provides members with limited liability to the same extent enjoyed by corporate shareholders [citation], but permits the members to actively participate in the management and control of the company [citation.]' " (*PacLink Communications Internat., Inc. v. Superior Court* (2001) 90 Cal.App.4th 958, 963 (*PacLink*).) Also, "[l]ike corporate shareholders, members of a limited liability company hold no direct ownership interest in the company's assets." (*Denevi v. LGCC, LLC* (2004) 121 Cal.App.4th 1211, 1214, fn. 1 (*Denevi*); see Corp. Code, § 17300 [3].) "Because members of the [limited liability company] hold no direct ownership interest in the company's assets (Corp. Code, § 17300), the members cannot be directly injured" when the company's property is injured. (*PacLink, supra*, at p. 964, fn. omitted.)

Pertinent to our discussion, the courts have applied the law of corporations to a limited liability company with regard to a member's right to sue third persons. "In determining whether an individual action as opposed to a derivative action lies [against third persons], a court looks at 'the gravamen of the wrong alleged in the pleadings.' " (*PacLink, supra*, 90 Cal.App.4th at p. 965, quoting from *Nelson v. Anderson* (1999) 72

---

[3]     Corporation Code section 17300, reads: "A membership interest and an economic interest in a limited liability company constitute personal property of the member or assignee. *A member or assignee has no interest in the specific limited liability company property*." (Italics added.)

4

Cal.App.4th 111, 124 (*Nelson*).) Where "the gravamen of the complaint is injury to the whole body of [the LLC's members], it [is] for the [LLC] to institute and maintain a remedial action." (*Nelson, supra*, at pp. 125-126; see *Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 212, 232, fn. 6 ["[t]he principle that a shareholder may not recover individually for injury to the corporation applies equally to claims against third persons"].)

Turning to Monahan's appellate assertions, we initially reject its reliance on the general rule that a member of a limited liability company may pursue both derivative and individual claims. (See *Denevi, supra*, 121 Cal.App.4th at p. 1221.) While this is a correct statement of the general rule, it is not applicable in this case. Monahan's gross negligence claim against Ghilotti is not "based on contract to which [Monahan] is a party, or on a right belonging severally to [Monahan], or on a fraud affecting [Monahan] directly . . . ," or on defamation. (*Sutter v. General Petroleum Corp.* (1946) 28 Cal.2d 525, 530.) Rather, the allegations of gross negligence are based solely on Ghilotti's performance or nonperformance of its work at the project site.[4] Ghilotti's "obligations

---

[4] In its second amended cross-complaint, Monahan set forth in 39 numbered paragraphs its version of the events that resulted in this litigation, repeatedly alleging it was acting as the managing member of Larkspur Partners both before, during, and after the time that Ghilotti performed work at the Drake's Cove project site. In a separate paragraph number 40, Monahan set forth the following "special allegations": "As a result of [Ghilotti's] grossly negligent acts, [Monahan] was cause to *itself directly* suffer injury and legally compensable damages as set forth herein. [Monahan] has been *directly* damaged by loss to its business reputation on account of [Ghilotti's] acts in destroying over 100 trees on and about Drake's Cove and by [Ghilotti] conducting unpermitted grading on the site. [Monahan] *itself* was named in the largest newspaper in circulation in Marin County in a story appearing on the front page, describing a public outrage against [Monahan] as being responsible for the unpermitted destruction of heritage and non-heritage trees in the Drake's Cove project. [Monahan] *itself* was reviled in the press and in public hearings before duly constituted City of Larkspur boards and agencies, for [Ghilotti's] unlawful tree destruction and for [Ghilotti's] grading on the site at Drake's Cove without a permit. [Ghilotti] performed all of the acts which were incorrectly attributed to [Monahan]. The damage to [Monahan] was not *incidental* to that of Larkspur Partners but was directly incurred by [Monahan], as a result of [Monahan] itself being publicly singled out, whereas Larkspur Partners was not itself identified in the

[if] violated were duties" owed to the owner of the project site Larkspur Partners, not Monahan. (*Nelson, supra*, 72 Cal.App.4th at p. 125.) Monahan's purported injuries only arose after Larkspur Partners suffered injury from Ghilotti's alleged misconduct, starting with its September 2003 conduct of allegedly unpermitted grading and removal of trees on the project site. Consequently, Monahan's individual claim of gross negligence is not "temporally distinct" from the similar claim unsuccessfully pursued by Larkspur Partners at trial in this litigation. (*Denevi, supra*, 121 Cal.App.4th at p. 1222.)

Monahan also argues it may pursue an individual claim for gross negligence against Ghilotti based on a May 27, 2003, Letter of Intent, drafted by Ghilotti, regarding the work it proposed to perform at the project site. According to Monahan, the letter describes a "partnering agreement," "suggesting a fiduciary relationship" between Monahan and Ghilotti, which is much earlier and different from Ghilotti's purely contractual relationship with Larkspur Partners. However, before Ghilotti "can be charged with a fiduciary obligation, [it] must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 221.) Neither situation exists in this case. The May 27, 2003, letter was not an agreement between "Ghilotti and Monahan, alone;" it was signed by a representative of Ghilotti and a representative of Monahan, *as the managing member of Larkspur Partners*, and not as a separate entity to which Ghilotti owed any duties, fiduciary or otherwise.

Nor do we see any merit to Monahan's argument that it may pursue an individual claim for gross negligence against Ghilotti because "[e]ven when aspects of Ghilotti's

---

articles. [Monahan] was likewise harmed in its relations with the City of Larkspur and with all Marin governmental agencies, and it was prevented from conducting its regular business of development due to the public outrage arising from [Ghilotti's] acts alleged herein." In paragraph number 47, Monahan also alleged it had suffered damages "to its business reputation and has been curtailed in its ability to develop other properties in Larkspur and in Marin County, suffered loss of community esteem, and loss of business goodwill, all in an amount expected to exceed $5,000,000."

misconduct caused injury to all three appellants, [Ghilotti] caused *different* injury to Monahan because of its unique business." "The test is not whether [Monahan's] damages were unique, as [its] argument suggests. . . ." (*Nelson, supra*, 72 Cal.App.4th at p. 124.) A "cause of action is individual, not derivative, only ' "where it appears that the injury resulted from the violation of some special duty owed to [the member of the liability company] by [a third person] and having its origin in circumstances independent of [the member's] status." ' " (*Ibid.*) Here, Monahan's cross-action consists only of allegations that at all relevant times in its relations with Ghilotti, Monahan was acting in its status as the managing member of Larkspur Partners, and not as separate entity to which Ghilotti owed any duties, special or otherwise.

Accordingly, we reject Monahan's request to reinstate its cause of action against Ghilotti for gross negligence as Monahan lacked standing to pursue that claim, which was in every "sense derivative of [its] status as [the managing member] of" Larkspur Partners. (*Denevi, supra*, 121 Cal.App.4th at p. 1222.) Therefore, the order of dismissal of Monahan's cross-action against Ghilotti must be affirmed.

**II.     Trial Court's Denial of Motion in Limine to Exclude Parol Evidence**

*A.     Relevant Facts*

Before trial, Larkspur Partners and Monahan Construction (hereafter referred to as appellants) filed a joint motion in limine seeking a preliminary fact hearing to bar parol evidence on the meaning of the Ghilotti/Monahan Construction standard form contract. According to appellants, the contract terms were so specific that Ghilotti should not be allowed to introduce parol evidence that would either expressly or impliedly contradict the terms. Ghilotti opposed the motion, arguing that the evidence produced in discovery mandated that parol evidence be admitted to resolve the parties' contract dispute.

At the pretrial hearing on the matter, the trial court initially announced its tentative ruling on appellants' motion: "Next, 'Exclusion of parol evidence or [Evidence Code section] 402 hearing regarding admissibility of parol evidence.' . . . I don't need a 402 hearing in order to rule on this one. [¶] The defense statement, 'To exclude parol evidence will shorten the trial,' is clearly true . . . .  But I really have no choice but to

7

deny this motion. [¶] It's evident that the parties' written contracts can only be construed in view of their interpretation at the time of their conduct, city officials' conduct, other people's conduct, other documentary evidence, and the parties' admissions. [¶] . . . [¶] We all know [Code of Civil Procedure] Section 1856 [the general parol evidence statute] contains numerous exceptions. I find that Subsections (b), (c), (e) and (f) may apply here. Moreover, [Ghilotti] is entitled to offer evidence of defendant's conduct in connection with [its] estoppel defense."

Appellants disagreed with the court's tentative ruling, arguing that parol evidence should be barred "because the words of the contract are so clear." In opposition, Ghilotti argued appellants had "cherry-picked" phrases out of the contract without "any factual background at all," and that parol evidence should be allowed as to the parties' intent and interpretation of any contract terms, and what the parties actually did to comply with the contract terms. In reply, appellants conceded they had no objection to Ghilotti presenting evidence as to what the parties did or what happened in the case. Rather, appellants were only asking that the court preclude Ghilotti from arguing to the jury that appellants had certain obligations that were contrary to the express terms of the standard form contract.

The court replied that its ruling was limited to allowing in "parol evidence. That doesn't mean the piece of parol evidence is going to come in. It's arguable, this isn't really a proper motion in limine at all. . . . [¶] . . . [¶] In this case, in my opinion, having read all these briefs, it's just not that simple. . . . So request for ruling excluding all parol evidence about this contract is denied for the reasons I've now stated."

### B. Analysis

Code of Civil Procedure section 1856, the general parol evidence statute, provides, in pertinent part, that: "(a) Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement. [¶] (b) The terms set forth in a writing described in subdivision (a) may be explained or supplemented by evidence of consistent additional terms unless the writing is intended also as a complete and exclusive statement of the terms of the agreement. [¶]

8

(c) The terms set forth in a writing described in subdivision (a) may be explained or supplemented by course of dealing or usage of trade or by course of performance. [¶] . . . [¶] (e) Where a mistake or imperfection of the writing is put in issue by the pleadings, this section does not exclude evidence relevant to that issue. [¶] (f) Where the validity of the agreement is the fact in dispute, this section does not exclude evidence relevant to that issue. [¶] (g) This section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in Section 1860, or to explain an extrinsic ambiguity or otherwise interpret the terms of the agreement, or to establish illegality or fraud." [5]

Appellants argue the trial court's in limine ruling was erroneous as a matter of law because the Ghilotti/Monahan Construction standard form contract terms were so specific as to preclude parol evidence regarding any oral agreement that would contradict the contract terms. We disagree. Ghilotti's theories at trial were that it had either (1) complied with the contract terms, or (2) the contract terms were modified by either waiver or estoppel after the execution of the contract and before any dispute arose regarding the contract terms. As to both theories, parol evidence of the parties' course of conduct was admissible to resolve "what the parties understood and intended" the contractual terms to mean. (*City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 393.) Despite the fact that the parties' contract excluded modifications except by a signed writing, that provision did not preclude Ghilotti from proffering parol evidence of waiver or estoppel by the parties' conduct inconsistent with the contract terms. (See Civ. Code § 1698[6]; *Diamond Woodworks, Inc. v. Argonaut Inc.*

---

[5]    On August 13, 2013, the Legislature amended Evidence Code section 1856 to make nonsubstantial changes in the language of certain subdivisions, and to include trust instruments in the definition of the term "agreement." (Stats. 2013, ch. 81, § 1 [2013-2014 Reg. Sess.].) The amendment will become effective January 1, 2014. (Gov. Code, § 9600.)

[6]    Civil Code section 1698 reads: "(a) A contract in writing may be modified by a contract in writing. [¶] (b) A contract in writing may be modified by an oral agreement to the extent that the oral agreement is executed by the parties. [¶] . . . [¶] (d) Nothing in this section precludes in an appropriate case the application of rules of law concerning

9

*Co.* (2003) 109 Cal.App.4th 1020, 1037-1038 [modification by waiver], disapproved on other grounds in *Simon v. San Paolo U.S. Holding Co. Inc.* (2005) 35 Cal.4th 1159, 1182-1183; *Conley v. Matthes* (1997) 56 Cal.App.4th 1453, 1466 [modification by estoppel]; *Frank T. Hickey, Inc. v. Los Angeles Jewish Community Council* (1954) 128 Cal.App.2d 676, 682-683 [modification by waiver].)  Because we see no error in the trial court's in limine ruling, we must affirm the amended judgment in favor of Ghilotti. [7]

## DISPOSITION

The appeals from the June 8, 2010 judgment and the August 9, 2010 order are dismissed.  The November 12, 2010 amended judgment and the November 12, 2010

estoppel, oral novation and substitution of a new agreement, rescission of a written contract by an oral agreement, waiver of a provision of a written contract, or oral independent collateral contracts."

[7]  Appellants also argue that because Ghilotti was contractually obligated to obey the law, the standard form contract could not be construed otherwise, "[e]ven if the contract *could* be construed to relieve Ghilotti of its obligation to obey the law, whether by parol evidence or otherwise . . . ."  In support of its argument appellants rely on Civil Code section 3513, which reads:  "Any one may waive the advantage of a law intended solely for his benefit.  But a law established for a public reason cannot be contravened by a private agreement."  However, we are not here concerned with a private agreement that contravened the law.  At issue here is " '[t]he general principle[, which] remains unaltered that "there is no public policy which ' "opposes private, voluntary transactions in which one party, for a consideration, agrees to shoulder a risk which the law would otherwise have placed upon the other party . . . ." ' [Citations.]" ' " (*Benedek v. PLC Santa Monica* (2002) 104 Cal.App.4th 1351, 1359.)  *Azteca Construction, Inc. v. ADR Consulting, Inc.* (2004) 121 Cal.App.4th 1156, which concerned the disqualification of arbitrators, is factually distinguishable from this case, and does not support appellants' argument that "even if the meaning of the contract were in any doubt, settled law bars the construction advocated by Ghilotti."

10

order dismissing the cross-action of Monahan Pacific Corporation are affirmed.  Ghilotti Brothers, Inc. is awarded costs on appeal.


                                            _____

                                            Jenkins, J.


We concur:


_____
Pollak, Acting P. J.


_____
Siggins, J.